**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
DAWN LOESCH,                      :
                                  :
            Plaintiff,            :    CIVIL ACTION
                                  :
      vs.                         :    No. 05-cv-0578
                                  :
CITY OF PHILADELPHIA,             :
                                  :
            Defendant.            :
```

**MEMORANDUM AND ORDER**

**Joyner, J.**                                        **May 29, 2008**


        Presently before the Court are Defendant's Renewed Motion

for Judgment as a Matter of Law or, in the Alternative, for a New

Trial or Remittitur ("D. Mot.") (Doc. Nos. 74, 82), Plaintiff's

Response ("P. Resp.") (Doc. No. 84), and Defendant's Reply ("D.

Rep.") (Doc. No. 86).  For the reasons set forth below, the Court

DENIES Defendants' Motion.


                            BACKGROUND

        On February 4, 2005, Plaintiff commenced this action by

filing her Complaint claiming that Defendant City of Philadelphia

violated Title VII of the Civil Right Act of 1964, 42 U.S.C. §

2000e *et seq.*, and the Pennsylvania Human Relations Act, 43 Pa.

Cons. Stat. § 951 *et seq.*.  Specifically, Plaintiff, previously a

                                1

paramedic in the City of Philadelphia Fire Department, claimed
that the Department discriminated on the basis of gender when it
terminated her medical command after violations of Department
protocol, but gave similarly situated male paramedics lesser
punishments.  After a five-day jury trial, the jury returned a
verdict in Plaintiff's favor and awarded her $464,037 in back pay
and front pay damages.  During trial, at the close of Plaintiff's
case-in-chief, Defendant had moved for judgment as a matter of
law pursuant to Fed. R. Civ. P. 50(a), which we denied.
Defendant now files a renewed Motion for Judgment as a Matter of
Law pursuant to Rule 50(b), or in the alternative for a new trial
under Fed. R. Civ. P. 59, or for remittitur.

STANDARD OF REVIEW

**A.  Rule 50 Motion for Judgment as a Matter of Law**

Upon the renewed motion of a party, Fed. R. Civ. P. 50(b)
allows the trial court to enter judgment as a matter of law at
the conclusion of a jury trial notwithstanding a jury verdict for
the opposing party.  Such judgment may be entered under Rule
50(b) "only if, as a matter of law, the record is critically
deficient of that minimum quantity of evidence from which a jury
might reasonably afford relief."  Trabal v. Wells Fargo Armored
Serv. Corp., 269 F.3d 243, 249 (3d Cir. 2001).  In deciding

2

whether to grant this "sparingly invoked remedy," we must
"refrain from weighing the evidence, determining the credibility
of witnesses, or substituting our own version of the facts for
that of the jury." Marra v. Phila. Housing Auth., 497 F.3d 286,
300 (3d Cir. 2007).  Rather, we view the evidence in the light
most favorable to the nonmoving party and, "giving it the
advantage of every favorable inference," determine if "there is
insufficient evidence from which a jury reasonably could find
liability." Id.

**B.  Rule 59 Motion for New Trial**

The ordering of a new trial pursuant to Federal Rule of
Civil Procedure 59 is within the sound discretion of the district
court. Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1017
(3d Cir. 1995).  Under Rule 59(a), a court may grant a new trial
"for any of the reasons which new trials have heretofore been
granted." Fed. R. Civ. P. 59(a).  A court may grant a new trial
if doing so is required to prevent injustice or to correct a
verdict that was against the weight of the evidence. Corrigan v.
Methodist Hosp., 234 F. Supp. 2d 494, 498 (E.D. Pa. 2002).  A
court may also grant a new trial if the verdict was the result of
erroneous jury instructions, was excessive or clearly unsupported
by the evidence, or was influenced by extraneous matters such as

passion, prejudice, sympathy or speculation.  Id.  We are wary,
however, that the grant of a new trial requires meeting a "high
threshold," Grazier v. City of Philadelphia, 328 F.3d 120, 128
(3d Cir. 2003), and "[a]bsent a showing of substantial injustice
or prejudicial error, a new trial is not warranted and it is the
court's duty to respect a plausible jury verdict." Montgomery
Cty. v. MicroVote Corp., 152 F. Supp. 2d 784, 795 (E.D. Pa.
2001).


## DISCUSSION


### I.  Sufficiency of the Evidence

Reviewing the record in a light most favorable to Plaintiff,
we cannot find that it is "critically deficient of that minimum
quantity of evidence from which a jury might reasonably afford
relief." Trabal, 269 F.3d at 249.  Plaintiff adduced sufficient
evidence at trial to support the jury's finding that she had made
out the Title VII prima facie case, which requires that the
Plaintiff show: (1) she is a member of a protected class; (2) she
was qualified for the position held; (3) she was discharged from
that position; and (4) non-members of the protected class were
treated more favorably.  McDonnell Douglas Corp. v. Green, 411

4

U.S. 792, 802 (1973); <u>Abramson v. William Paterson College of N.J.</u>, 260 F.3d 265, 282 (3d Cir. 2001).  Of course, there is no dispute that Plaintiff, a woman, was not a member of a protected class.  Plaintiff was also a certified paramedic and so the jury could have easily found she was qualified for the position from which she was discharged.  There was also sufficient evidence on which the jury could have found that Plaintiff was constructively discharged.  Although she did not appeal the termination of her medical command - which effectively terminated her position as a paramedic - there was evidence that Plaintiff was informed by her union representative that an appeal was futile and that she was advised not to pursue it.  <u>See</u> <u>Goss v. Exxon Office Sys. Co.</u>, 747 F.2d 885, 887-88 (3d Cir. 1984) (explaining that constructive discharge exists if "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign").  Finally, there was also evidence of other male paramedics who violated department protocols and had complaints made about them but received lesser punishments.  Thus, in sum, there was sufficient evidence in the record on which the jury could have reasonably concluded that Plaintiff succeeded on her initial burden of making out a Title VII prima facie case.

Under the McDonnell Douglas burden shifting standard, if a Title VII plaintiff succeeds in making out a prima facie case of discrimination, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment action. McDonnell Douglas, 411 U.S. at 802; Abramson v. William Paterson College of N.J., 260 F.3d 265, 282 (3d Cir. 2001).  Once the employer has done so, the burden shifts back to the plaintiff to demonstrate that the proffered reasons are mere pretext for discrimination.  Id.  Although Defendant put forth the justification that Plaintiff's medical command was terminated for violating department protocols in combination with other complaints, we find there was sufficient evidence to support a finding that that justification was pretextual.  We note in particular that there was a plethora of evidence in the record showing that other male paramedics had previously committed similar protocol violations and did not have their medical commands terminated, as Plaintiff did.[1]  Furthermore, testimony from Ron Augustyn, the former HR Chief for the Fire Department,

---

[1] Defendant argues that those other paramedics did not engage in sufficiently similar violations as Plaintiff, and thus they are not comparable.  To the extent that this is an argument that that comparator evidence should have been excluded, that argument is addressed below.  If, on the other hand, Defendant is arguing that the evidence was not sufficient as a basis for the jury's finding of discrimination, we reject that argument.  The violations and complaints related to other paramedics were not so vastly different from Plaintiff's that they could not have allowed the jury to make any reasonable inferences or conclusions from them.

regarding a gender-discriminatory environment in the department also provided a basis on which the jury could have found the City's proffered reasons to be pretextual.

Accordingly, we must find that the record was not so deficient of evidence on which the jury could have afforded relief to warrant the extraordinary remedy of overturning the jury's verdict in favor of Plaintiff.

## II. Defendant's Arguments for Judgment or New Trial

Defendant's post-trial Motion focuses primarily on arguing not that the evidence in the record was sufficient, but that there were various errors in the trial that, if corrected, would lead inexorably to a direct verdict in Defendant's favor.  In the alternative, Defendant argues that these errors prejudiced the jury to such an extent that a new trial should be ordered.  We address Defendant's voluminous arguments in turn and, for the reasons stated below, reject those arguments and deny the Motion.

### A.  Evidentiary Issues

Defendant's first main argument is essentially that the Court erred in admitting various evidence and testimony, and that

had they been excluded, there would not have been sufficient evidence to support the jury's conclusions.  First, Defendant challenges the admission of certain testimony and exhibits to which it did not object during trial.  Specifically, Defendant argues that the court erred in failing to exclude: questioning and testimony on the City's settlement of two prior gender discrimination claims by other paramedics; Plaintiff's performance evaluations; and testimony from Fire Chief Butts. Defendant failed to object to these pieces of evidence at any time during the trial, and thus those objections are waived for purposes of post-trial review.  See Grace v. Mauser-Werke Gmbh, 700 F. Supp. 1383, 1388 (E.D. Pa. 1988) (holding that because plaintiff's counsel did not object to specific questions asked of expert at trial, objections to those questions are waived); see also Gov't of the Virgin Islands v. Archibald, 987 F.2d 180, 184 (3d Cir. 1993) ("If a party fails to object in a timely fashion, the objection is waived and we will review the admission of evidence only for plain error.").

Defendant also argues that the Court erred in refusing to exclude certain of Plaintiff's exhibits concerning complaints and investigatory files regarding other paramedics which were used by Plaintiff as "comparators" between Plaintiff and other paramedics in similar situations.  Plaintiff's main purpose in entering

8

these exhibits was to show that other paramedics who were the
subject of complaints and investigations similar to those against
Plaintiff were not disciplined as harshly.  At trial, Defendant
filed a Motion in Limine to exclude these exhibits, and we denied
the Motion.  Because we made a definitive ruling on that motion,
which covers the same exhibits to which Defendant objects here,
we may consider that Motion in Limine to be an objection
sufficient to preserve the question for this post-trial motion as
to all of the challenged exhibits.  See Am. Home Ins. Co. v.
Sunshine Supermarket, 753 F.2d 321, 324 (3d Cir. 1985)("[I]f an
issue is fully briefed and the trial court is able to make a
definitive ruling, then the motion in limine provides a useful
tool for eliminating unnecessary trial interruptions.").
Furthermore, we note that Defendant actually did make an
objection to a particular use of the exhibits in question and
expressed that he was making a continuing objection to further
uses.  Day 2 Tr. 255.  This objection also preserved the issue
for Defendant's post-trial motion.

    Defendant's first objection to the admission of the
comparator files is that they constitute inadmissible hearsay.
The Federal Rules of Evidence define hearsay as any out-of-court
statement "offered in evidence to prove the truth of the matter
asserted."  Fed. R. Evid. 801(c).  Hearsay is generally not

9

admissible under Rule 802, and Defendant argues that because
Plaintiff did not present any witnesses with first hand knowledge
of what actually occurred in the cases giving rise to the
complaints in the comparator files, those files should not have
been admitted into evidence.  The purpose of entering those files
into evidence, however, was not simply to show bad conduct on the
part of other paramedics; rather, it was to demonstrate the
Defendant's *response* to situations similar to that of Plaintiff
as potential evidence of discriminatory intent in Plaintiff's
case.  Thus, because the contents of the comparator files were
not being admitted to "prove the truth of the matter asserted" -
that is, to prove whether or not the bad acts by other paramedics
actually occurred - but for the other reason of providing
evidence of Defendant's mental state and/or intent, they did not
constitute inadmissible hearsay under the Rules of Evidence.

Defendant also asserts that the comparator files should not
have been admitted because in those other cases the paramedics
involved were not "similarly situated" in all material respects
and those cases involved lower levels of mistreatment.
Furthermore, Defendant argues that comparator files dated before
April 4, 2002 should not have been admitted because they involved
a different supervisor than the one that withdrew Plaintiff's
medical command.  In essence, all of these arguments are that the

files should not have been admitted because they were irrelevant.
It is indeed true that only relevant evidence is generally
admissible under Rule 402, and "relevant evidence" is defined as
evidence "having any tendency to make the existence of any fact
that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence."
Fed. R. Evid. 401.  This is a very low threshold that is easily
met by the comparator files, which bear on the important question
of whether other similarly situated individuals were treated more
favorably.

Finally, Defendant argues that the probative value of the
comparator files is substantially outweighed by the prejudice
caused by the jury's hearing about bad acts by other paramedics
in the department, and thus the files should have been excluded
under Fed. R. Evid. 403.  Pursuant to Rule 403, a court may
exclude otherwise relevant evidence if the probative value of the
evidence is "substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, waste of time, or needless
presentation of cumulative evidence."  Fed. R. Evid. 403.  We
therefore employ a cost/benefit analysis to determine whether to
exclude relevant evidence under 403; however, "there is a strong
presumption that relevant evidence should be admitted, and thus

11

for exclusion under Rule 403 to be justified, the probative value of evidence must be 'substantially outweighed' by the problems in admitting it." Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343-44 (3d Cir. 2002). The probative value of the comparator files here was extremely high, as they were crucial to the question of whether similarly situated individuals were treated differently - an essential component of the prima facie case under Title VII. We cannot find that the problems in admitting the files were sufficiently severe to "substantially outweigh" the very high probative value of the evidence. Accordingly, we find that the comparator files were properly admitted into evidence and the jury could have appropriately taken them into account in reaching its conclusions.

**B.   The City's Demonstration that Other Similarly Situated Women Were Treated More Favorably than Plaintiff**

Defendant next contends that it should be awarded judgment as a matter of law because it demonstrated that other female paramedics who committed protocol violations did not have their medical commands terminated - that is, they were treated more favorably than Plaintiff. Examining the case law cited by Defendant, we take this argument to mean one of two things.

12

Either Defendant is asking us to rule: (a) that, as a matter of
law, if other members of Plaintiff's protected class have been
treated more favorably, then under Title VII's legal standard
Plaintiff either cannot make out a prima face case or cannot
successfully make the case that Defendant's proffered
justifications were merely pretext for discrimination; or (b)
that, in light of these female comparators, there was
insufficient evidence to support a finding that Defendant's
proffered non-discriminatory reasons for Plaintiff's terminated
medical command were mere pretext for discrimination.

Defendant relies on the Third Circuit's decision in Simpson
v. Kay Jewelers, 142 F.3d 639, 646-47 (3d Cir. 1998), citing Bush
v. Commonwealth Edison Co., 990 F.2d 928, 932 (7th Cir. 1993), to
support this argument.  In Simpson, the Third Circuit held that
the Title VII Plaintiff in that case could not show that
Defendant's non-discriminatory reasons for the adverse employment
action were pretext by picking out "one comparator [from the non-
protected class] who was not demoted amid a sea of persons [from
the protected class] treated the same as her."  This case,
however, presents a starkly different scenario than the one
considered in Simpson.  Unlike the plaintiff in Simpson - who
chose *one* comparator who was treated more favorably and ignored
*thirty-five* others who were similarly demoted based on work

13

performance - Plaintiff in this case introduced evidence, as we have already noted, of several male comparators who were not terminated after similar protocol violations.  Furthermore, the jury in this case could easily have distinguished the cases of the two female paramedics cited by Defendant as being not sufficiently similar to Plaintiff's, because the protocol violations were on the whole too different from Plaintiff's, to be useful comparators.[2]  More substantially, however, while in Simpson the plaintiff relied *solely* on the one selectively-chosen comparator, Plaintiff here could point to other evidence supporting an inference of discrimination, notably the testimony of former HR Chief Augustyn, regarding the discriminatory environment of the department.  Accordingly, we find the Third Circuit's ruling in Simpson to be inapplicable here, and deny Defendant's request for judgment as a matter of law based on the evidence of female comparators it introduced at trial.

---

[2] To the extent that Defendant is arguing that Plaintiff could not make out a prima facie case, that argument would also be undermined by this possibility.

## C.  Jury Instructions

Defendant also contends that we should enter judgment in its favor, or in the alternative grant a new trial, because there were various problems with the jury instructions.  Rule 51 of the Federal Rules of Civil Procedure provides that in order to assign error either to jury instructions actually given or instructions that were requested but given, a party must properly object. Fed. R. Civ. P. 51(d).  A party properly objects by stating the matter objected to and the grounds for objection, and may do so (a) when given the opportunity by the court before the instructions are delivered to the jury, or (b) if not previously informed of the objected-to instruction, upon learning that the instruction or requested instruction will be, or has been, given or refused.  Fed. R. Civ. P. 51(b), (c).  The Third Circuit has further explained that a "failure to object at the time the jury received the proposed verdict sheet or when the jury returned" constitutes a waiver of the objection being made in a post-trial motion.  Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc., 181 F.3d 446, 463 (3d Cir. 1999).  If such a waiver has occurred, Rule 51 allows the court to consider "a plain error in the instructions . . . if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2).

15

In this case, Defendant failed to properly object to the jury instructions and the verdict slip both before the jury was charged and after the jury returned with a verdict.  In accordance with Rule 51(b), this Court assembled the parties, "out of the jury's hearing," before the instructions were given and informed them as to how the jury would be charged. Defendant's counsel were asked if they had any objections to Plaintiff's Points for Charge and they responded "Not at this time, your Honor."  (Day 5 Tr. 88).  At no point after making this statement - during the rest of the charging conference, during the reading of the charge to the jury, and after the verdict was returned and the jury discharged - did Defendant raise any objections about the jury instructions.  Accordingly, we review the jury instructions only for plain error.

The Third Circuit has advised that the plain error standard is met only if the purported error "is fundamental and highly prejudicial or if the instructions are such that the jury is without adequate guidance on a fundamental question and our failure to consider the error would result in a miscarriage of justice."  Fashauer v. New Jersey Transit Rail Operations, Inc., 57 F.3d 1269, 1289 (3d Cir. 1995).  The ability to reverse for plain error "should only be invoked with extreme caution in the civil context," and is only appropriate "where the error is so

serious and flagrant that it goes to the very integrity of the trial." Id. (citing United States v. Carson, 52 F.3d 1173, 1188 (2d Cir. 1995)).  With this high standard in mind, we cannot find that the jury instructions were plainly erroneous.  The instructions given provided "adequate guidance" to the jury on the fundamental questions under Title VII, and as we have already noted there was sufficient evidence to support the jury's conclusions.  Accordingly, we cannot grant judgment or a new trial to Defendant on the grounds that the jury instructions were flawed.


**D.  Statements Made by Plaintiff's Counsel to the Jury**

Defendant next argues that it is entitled to a new trial because Plaintiff's counsel made a number of misstatements during his closing statement to the jury.  However, once again Defendant made no objection to counsel's remarks either at the time they were made or at any time afterwards, and thus has waived the right to object to them now.  Waldorf v. Shuta, 142 F.3d 601, 629 (3d Cir. 1998), quoting Murray v. Fairbanks Morse, 610 F.2d 149, 152 (3d Cir. 1979)("Counsel's failure to object precludes [a party] from seeking a new trial on the grounds of impropriety of opposing counsel's remarks.").  Furthermore, the jury was

instructed at the beginning of trial and during the charge at the end of the trial that comments made by counsel were not to be considered as evidence and the jury should apply the law given by the Court.  (Day One Tr. 27; Day Five Tr. 136, 138-39, 162-63). This Court presumes that the jury followed the Court's instructions, and thus "it may be presumed here that the jury applied the law as instructed by the Court and disregarded any contrary statements made by counsel." Drozdowski v. Northland Lincoln Mercury, 2007 WL 4563520, at *4 (W.D. Pa. Dec. 21, 2007), citing Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City, 383 F.3d 110, 133 (3d Cir. 2004).  Accordingly, we must also deny Defendant's request for a new trial on this basis.


### E.  Back Pay Award

Finally, Defendant argues that the jury erred in its calculation of the back pay award for Plaintiff, and that the amount of back pay should be reduced.  As part of its verdict, after finding in Plaintiff's favor, the jury awarded Plaintiff $249,037.00 in back pay.  Defendant contends that this amount "clearly" resulted from multiplying Plaintiff's salary with the City by the period commencing on the date of her termination from employment and ending on the date of the verdict.  As such,

according to Defendant, the award must be reduced by the amount
Plaintiff actually earned during the back pay period.  Defendant
also argues that the award should be reduced by some amount
reflecting Plaintiff's duty to mitigate damages during the time
in the back pay period in which she was between jobs.

Successful Title VII plaintiffs are entitled to back pay,
and "[t]he appropriate standard for the measurement of a back pay
award is to take the difference between the actual wages earned
and the wages the individual would have earned in the position
that, but for discrimination, the individual would have
attained." Gunby v. Pa. Elec. Co., 840 F.2d 1108, 1119 (3d Cir.
1988).  The Third Circuit has instructed that remittitur is
appropriate when a jury verdict "is clearly unsupported by the
evidence and exceeds the amount needed to make the plaintiff
whole, i.e., to remedy the effect of the employer's
discrimination." Starceski v. Westinghouse Elec. Corp., 54 F.3d
1089, 1100 (3d Cir. 1995).

Here, the jury was given detailed instructions as to how to
calculate back pay under the law of Title VII, including
instructions regarding mitigation of damages and reducing the
award by amounts earned during the back pay period.[3]  The jury

---

[3] Defendant's assertion that we did not instruct the jury on mitigation
of damages is, at best, disingenuous.  In fact, we very clearly instructed the
jury that the plaintiff "has a duty to mitigate her damages," and explained

then returned with the back pay award of $249,037.00.  However,
the verdict slip given to, and returned by, the jury did not call
for a breakdown in how the back pay was calculated, and so any
attempt to deconstruct the amount of the award would have some
amount of speculation.  Nevertheless, we cannot conclude that the
back pay amount returned by the jury was "clearly unsupported" by
the evidence.  In calculating the amount that it eventually
awarded, the jury could have considered Plaintiff's testimony
that she frequently worked overtime - which paid time-and-a-half
- in her position with the City and that in her later jobs she
did not receive insurance and leave benefits that she had enjoyed
when employed by the City.  The jury could have concluded that
these factors offset the amount of salary Plaintiff made in the
positions she maintained during the back pay period.  While, to
be sure, it would have been difficult for the jury to "forecast
what would have happened had there been no unlawful acts," Id. at
1101, the jury rightfully could have concluded that this "risk of
lack of certainty with respect to projections of lost income must

---

that this "means that Plaintiff must take advantage of any reasonable
opportunities that may have existed under the circumstances to minimize or
reduce the loss or damage caused by the City."  (Day 5 Tr. 154-55).
Furthermore, we note once again that Defendant did not object to our
instructions as to the calculation of back pay, including mitigation of
damages.

be borne by the wrongdoer, not the victim." Goss, 747 F.2d at 889.

Accordingly, because the back pay damages awarded to Plaintiff were "neither excessive as a matter of law nor clearly unsupported by the record," Starceski, 54 F.3d at 1101, we must deny Defendant's request that the back pay award of be reduced.


## III. Conclusion

Under the burden-shifting standard for Title VII claims, there was sufficient evidence to support conclusions by the jury that Plaintiff made out a prima facie case of gender discrimination and that the reasons for Plaintiff's termination proffered by Defendant were pretextual.  We reject Defendant's assertions of error in the admission of much of that evidence, and accordingly the City's Motion for Judgment as a Matter of Law must be DENIED.  Furthermore, we cannot find that there was substantial injustice or prejudicial error in how the trial was conducted and thus, for the reasons set forth above, Defendant's alternative Motion for New Trial must also be DENIED.  Finally, the back pay award was not excessive as a matter of law, and therefore Defendant's alternative Motion for Remittitur is also DENIED.

An order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
DAWN LOESCH,                        :
                                    :
            Plaintiff,              :    CIVIL ACTION
                                    :
      vs.                           :    No. 05-cv-0578
                                    :
CITY OF PHILADELPHIA,               :
                                    :
            Defendant.              :
```

ORDER

AND NOW, this        day of May, 2008, upon consideration of
Defendant's Renewed Motion for Judgment as a Matter of Law or, in
the Alternative, for a New Trial or Remittitur (Doc. Nos. 74,
82), and responses thereto, for the reasons set forth in the
accompanying memorandum, it is hereby ORDERED that the Motion is
DENIED.

BY THE COURT:

S/J. CUTIS JOYNER
J. CURTIS JOYNER, J.