**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAWN LOESCH, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| vs. | : | No. 05-cv-0578 |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

**Joyner, J.**                                          **June 19, 2008**


        Presently before the Court are Plaintiff's Motion to Mold
Verdict and for Counsel Fees (Docs. 69, 87), Defendant's Response
(Doc. No. 75), and Plaintiff's Reply (Doc. No. 78).  For the
reasons set forth below, the Court GRANTS Plaintiff's Motion and
awards her attorney's fees, prejudgment interest, and damages
reflecting the negative tax consequences of receiving her lost
wages in a lump sum.


**I.  Background**

        On February 4, 2005, Plaintiff commenced this action by
filing her Complaint claiming that Defendant City of Philadelphia
violated Title VII of the Civil Right Act of 1964, 42 U.S.C. §

1

2000e *et seq.*, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 *et seq.*.  Specifically, Plaintiff, previously a paramedic in the City of Philadelphia Fire Department, claimed that the Department discriminated on the basis of gender when it terminated her medical command after violations of Department protocol, but gave similarly situated male paramedics lesser punishments.  After a five-day jury trial, the jury returned a verdict in Plaintiff's favor and awarded her $464,037 in back pay and front pay damages.  During trial, at the close of Plaintiff's case-in-chief, Defendant had moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), which we denied.  After trial, we also denied Defendant's renewed Motion for Judgment as a Matter of Law pursuant to Rule 50(b), or in the alternative for a new trial under Fed. R. Civ. P. 59, or for remittitur. Plaintiff now moves for attorney's fees and to mold the amount awarded to include prejudgment interest and to reflect the tax consequences of the lump sum award.

## II.  Petition for Attorney's Fees

Plaintiff moves for attorney's fees, costs and expenses, which may be awarded under Title VII, in the amount of $246,482.53 to reimburse Plaintiff's counsel for work done on her

2

successful trial and on post-trial motions.  For its part, Defendant challenges the amount requested by Plaintiff as excessive, contending: (1) the hourly rates used for each attorney involved were excessive and unreasonable; (2) the number of hours claimed to be expended working on the matter were unjustified and unreasonable; (3) attorney's fees should be adjusted downward because the Plaintiff recovered only a fraction of the amount she sought in damages; and (4) some of the costs sought to be reimbursed were unreasonable.

## A.  Legal Standard for Attorneys' Fee Awards

Title VII and the PHRA give the court the discretion to award the prevailing party "a reasonable attorney's fee as part of the costs."  42 U.S.C. § 2000e-5(k); see also 43 Pa. Cons. Stat. §§ 959(d.1)(2), 962(c.2).  The Supreme Court has held that "in the absence of special circumstances a district court not merely 'may' but *must* award fees to the prevailing plaintiff." Indep. Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 761 (1989) (citing Newman v. Piggie Park Enter., Inc., 390 U.S. 400, 402 (1968)).  Thus, the party seeking attorneys' fees must show that (1) she is the prevailing party; and (2) the fee requested is reasonable.

To be considered a prevailing party, one must obtain actual relief on the merits of her claim which "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111 (1992). Once the plaintiff crosses this threshold, the court must determine which fee is "reasonable." Hensley v. Eckerhart, 461 U.S. 430, 433 (1983).

In calculating an attorneys' fees award, we begin with the "lodestar" formula, which multiplies "the number of hours reasonably expended on litigation . . . by a reasonable hourly rate." Id. at 433. To determine a reasonable hourly rate, the court starts with the attorneys' usual billing rate. Pa. Envtl. Def. Found. v. Canon-McMillan School, 152 F.3d 228, 231 (3d Cir. 1998). We then consider the prevailing market rates in the relevant community. Id. With respect to the number of hours expended, the court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" Id. at 232 (citing Pub. Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995)).

4

The party seeking attorneys' fees has the burden of producing "evidence supporting the hours worked and the rates claimed." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). The burden then shifts to the opposing party to challenge, by affidavit or brief with sufficient specificity to give fee appellants notice, the reasonableness of the requested fee. Id. (citing Hensley, 461 U.S. at 433). Once the adverse party raises objections to the fee request, the court possesses considerable discretion to adjust the award in light of those objections. Id. For instance, after calculating the lodestar, the court may reduce that amount, "primarily based on the degree of success that the plaintiff obtained." Pa. Envtl. Def. Found., 152 F.3d at 232 (citing Hensley, 461 U.S. at 435). This adjustment "accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims." Rode, 892 F.2d at 1183.

**B.   Application of Attorneys' Fees Standard**

      **1.   Reasonableness of Hourly Rates**

Lead counsel, Norman Perlberger, has requested an hourly rate of $350.00 per hour for his services during the trial and post-trial periods of this litigation. Plaintiff also seeks fees attributable to work performed by Gerald Pomerantz and Mark

5

Scheffer at a rate of $350.00 per hour, as well as $300.00 per hour for Walter Schirrmacher and $250.00 for associate Michael Jones.  Defendant objects to the rates requested by all five attorneys.

With respect to hourly rates, "the burden is on the fee applicant to provide satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984). In support of the requested hourly rates, Mr. Perlberger submitted an outline of the work histories of the attorneys who worked on this matter, as well as a copy of the Community Legal Services (CLS) Attorneys Fees Schedule for 2006, and the affidavit of Sidney L. Gold, an attorney experienced in age discrimination and other employment-related cases.  Plaintiff also refers us to this Court's award of attorneys' fees in Tomasso v. Boeing Co., 2007 WL 2753171 (E.D. Pa. Sept. 21, 2007), another employment discrimination case which also involved a five-day trial and on which four of the attorneys in this matter worked.

The Third Circuit has held that courts may look to the CLS Fee Schedule in determining a reasonable hourly rate for counsel.

See <u>Maldonado v. Houstoun</u>, 256 F.3d 181, 184, 187 (3d Cir. 2001).
Under the CLS schedule, attorneys with more than twenty-five
years of experience, such as Mr. Perlberger and Mr. Pomerantz
have, command a rate of $325 to $410 per hour.  Beginning with
lead counsel, we find that $350 per hour is a reasonable rate for
Mr. Perlberger, who has been a practicing attorney for thirty-
five years and has extensive trial experience.  This rate is well
within the CLS schedule for an attorney with the depth of
experience that Mr. Perlberger has,[1] and as lead counsel Mr.
Perlberger did the vast majority of the work in the courtroom
during trial.

         However, we do not find that the evidence submitted by
Plaintiff supports the same $350 hourly rate for Mr. Pomerantz.
To be sure, Mr. Pomerantz has practiced as long as Mr. Perlberger
and appears to have significant experience in employment
discrimination matters.  Nevertheless, an examination of the
billing records reveals that the actual work done by Mr.
Pomerantz does not justify the same billing rate as that
commanded by Mr. Perlberger in this particular case.  It appears
that Mr. Pomerantz conducted witness preparation and assisted in

---

         [1] We reject Defendant's argument that the only experience we should
consider is that stemming from actual work on employment discrimination
matters.  We cannot take such a narrow view, particularly as Mr. Perlberger's
unquestioned extensive trial experience brings with it courtroom skills that
would apply to a range of practice areas.

other trial preparation, and accompanied Mr. Perlberger in the
courtroom.  As Defendant points out, at trial Mr. Pomerantz
briefly questioned one witness, but did not make any legal
argument and primarily only assisted Mr. Perlberger with the
presentation of trial documents.  Simply put, the type of work he
did in the courtroom does not command the same exact hourly rate
as the lead counsel who was actually questioning witnesses and
addressing the Court in legal argument.  See Ursic v. Bethlehem
Mines, 719 F.2d 670, 677 (3d Cir. 1983) (noting that "routine
tasks" performed by experienced partners should not be billed at
usual senior partner rates).  The bulk of Mr. Pomerantz's
substantive work was done outside the courtroom in the form of
witness and trial preparation, and thus we find a more reasonable
rate to be that commanded by Mr. Scheffer, a less experienced
attorney whose work was primarily in the form of depositions and
motion practice.  Accordingly, we will award Mr. Pomerantz a rate
of $300 per hour.

    An attorney with experience similar to Mr. Scheffer, who had
been practicing for seventeen years at the time of trial, would
command a rate of $275 to $315 under the CLS Fee Schedule.
However, Plaintiff has requested a rate of $350 per hour for Mr.
Scheffer's work.  While it appears that Mr. Scheffer did
important work on this case - particularly motion practice and

8

conducting depositions - Plaintiff has not given the Court a reason why this work justifies a departure from the CLS Fee Schedule to the same rate commanded by Mr. Perlberger, who was lead counsel on this case.  We also note that much of the pretrial discovery work done by Mr. Scheffer appears to be fairly routine.  Accordingly, we will award Mr. Scheffer an hourly rate of $300, which is squarely within the CLS Fee Schedule for an attorney with Mr. Scheffer's experience.

Turning to Mr. Schirrmacher, according to the CLS Fee Schedule, an attorney with Mr. Schirrmacher's experience of fifteen years at time of trial would command $240 to $300 per hour.  Plaintiff has requested an hourly rate for Mr. Schirrmacher of $300, at the upper end of the CLS schedule.  The billing timesheets reflect that Mr. Schirrmacher's work on this case was primarily limited to document review and writing correspondence and internal memoranda.  Without more evidence from Plaintiff to guide us, this appears to be work that could have been done by a lower-level associate.  Accordingly, we will reduce the requested rate for Mr. Schirrmacher to $250 per hour, which is at the lower end of the CLS Fee Schedule for someone of his experience-level.

Finally, Plaintiff has inexplicably offered no evidence at all with respect to the practice areas or experience of Mr.

9

Jones, even though he appears on the billing timetables submitted in support of the fee petition.  Mr. Gold opined that the requested rate of $250 was consistent with the prevailing rates for someone of Mr. Jones's experience in employment discrimination matters.  However, despite the fact that the $250 rate was approved for Mr. Jones in <u>Tomasso</u>, 2007 WL 2753171 at *7,[2] we have been given no indication in this case as to why he should fall into the $250 rate category under the CLS schedule and Plaintiff has not otherwise carried her burden of supporting the petition with respect to Mr. Jones.  While Mr. Gold's opinions are respected by the Court, they provide little enlightenment as to Mr. Jones's qualifications.  Accordingly, we will reduce the rate requested by Mr. Jones by forty percent to $150 per hour, which is the rate to which the City appears to agree.  See <u>Rapp v. Cameron</u>, 2002 WL 254504, at *6 (E.D. Pa. Feb. 20, 2002)(reducing hourly rates by fifty percent for attorneys who had not submitted evidence of their experience or qualifications).

---

[2] We also note with curiosity that in <u>Tomasso</u>, Mr. Scheffer's rate was reduced from the requested $350 to the same rate requested for Mr. Jones - again, $250 per hour - because they had the same number of years of experience.  We are willing to give Plaintiff's counsel the benefit of the doubt on the matter - particularly because we were able to determine Mr. Scheffer's rate without reference to his co-counsel - but we sincerely hope that the omission of any evidence of Mr. Jones's experience from the fee petition was not an attempt to avoid the same reduction that occurred in <u>Tomasso</u>.

In sum, the hourly rates we will use in calculating the lodestar will be as follows:

```
Norman Perlberger          $350
Gerald J. Pomerantz        $300
Mark S. Scheffer           $300
Walter Schirrmacher        $250
Michael Jones              $150
```

### 2.  Reduction of Number of Hours

When evaluating a fee petition, the Court should exclude hours that are excessive, redundant, or otherwise unnecessary. Rode, 892 F.2d at 1183.  "In determining what hours are reasonably expended on the suit, 'the most critical factor is the degree of success obtained . . . .  Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."  Blum v. Witco Chem. Corp., 888 F.2d 975, 983 (3d Cir. 1989) (quoting Hensley, 461 U.S. at 435-36).

Plaintiff seeks compensation for her attorneys for a total of 709.87 hours of work, and submits the attorneys' computer-generated time sheets to support the request.  The request breaks down by attorney as follows:

```
Norman Perlberger          266.16
Gerald J. Pomerantz        132.00
Mark S. Scheffer           184.97
Walter Schirrmacher        121.74
Michael W. Jones             5.00
```

11

Defendant makes a number of objections to the hours expended by the counsel listed above.  First, Defendant objects to the roughly sixty hours spent by Mr. Perlberger reviewing case files to "get up to speed" when he got involved with the matter shortly before trial.  Defendant asserts that it was unnecessary for both Mr. Scheffer - who handled virtually all the pretrial work - and Mr. Perlberger to spend the time to become familiar with the facts of the case when Mr. Scheffer was capable of trying the case himself.  This exact argument was rejected in <u>Tomasso</u>, 2007 WL 2753171 at *5, a case in which Mr. Perlberger also took over for Mr. Scheffer when it came time for trial.  For the reasons articulated in that decision, we overrule this objection.  Simply put, Mr. Perlberger's much more extensive trial experience contributed to a successful result for Plaintiff, and the time spent reviewing the case was not wasteful or unnecessarily redundant.[3]

Defendant's next objection is that some of Mr. Scheffer's pretrial discovery work should have been delegated to Mr. Jones so that it could be billed at Mr. Jones's lower associate rate. Whether the work done by Mr. Scheffer during this time should

---

[3] We also overrule the same objection with respect to Mr. Pomerantz.  A quick review of the descriptions in the time sheets indicates that Mr. Pomerantz actually spent very little billable time reviewing the case, and the vast majority of his time was spent assisting Mr. Perlberger with witness preparation and at trial.

12

have been billed at associate rates is a question related to the reasonableness of Mr. Scheffer's requested hourly rate, and not to the reasonableness of the time he expended on the work at issue.  We therefore consider it only in our determination of the hourly rate above and not in relation to the reasonableness of the hours expended on that work.

Defendant next objects to the time spent by Mr. Scheffer in preparing a number of amended complaints, because these were the product of failures in earlier versions of Plaintiff's Complaint. We will sustain this objection.  Plaintiff's Complaint was amended twice, the second of which being in response to an Order granting Defendant's Motion for a More Definite Statement under Fed. R. Civ. P. 12(e) because the Complaint was impermissibly vague.  The end result was an Amended Complaint that set forth the same legal claims as the original Complaint, but which included the factual details necessary to enable Defendant to answer which should been included at the outset.  The time spent amending the complaint is similar to time spent on an unsuccessful claim, which is often eliminated or reduced in attorney's fee petitions.  It would simply not be reasonable to charge Defendant for the early errors in Plaintiff's Complaint, and therefore we reduce Mr. Scheffer's compensable time by the 9.27 hours he spent on the Amended Complaints.

13

Defendant next asserts that Plaintiff was unnecessarily represented by both Mr. Scheffer and Mr. Schirrmacher at her January 24, 2007, settlement conference.  Defendant only puts forth that they both attended, however, and not that they engaged in redundant work or that one attorney did nothing.  Accordingly we will overrule this objection in part and will award fees for both attorneys.  However, we note that Mr. Scheffer's time entry indicates he spent 2.5 hours at the conference, while Mr. Schirrmacher was there for 2.33 hours.  Thus, we will reduce Mr. Scheffer's time by .17 hours to resolve the discrepancy.

Defendant's next objection is that trial preparation time and trial time were excessive because four different attorneys were charging fees in the days preceding and during trial, and that "much of this time . . . was spent performing the same tasks by more than one lawyer."  Defendant suggests that for the period from October 23, 2007, to November 1, 2007 - during which 312.52 hours were billed - the hours should be reduced to twenty-four hours per day during trial (or twelve hours a day for two attorneys) and twenty hours per day for pretrial work.  Defendant has not, however, identified which trial-related tasks were redundant.  In fact, after a review of the time sheets it appears to us that the tasks were allocated efficiently - Mr. Scheffer handled much of the written work, such as responses to Motions in

14

Limine and the points for charge; Mr. Schirrmacher handled much
of the legal research and responses to smaller motions not
handled by Mr. Scheffer; and Messrs. Perlberger and Pomerantz,
who had by far more trial experience, were the only ones to bill
any time during the trial itself, handling courtroom-related
work.  Accordingly, we overrule Defendant's broad objection to
the hours expended shortly before and during trial.

Finally, Defendant objects to a number of miscellaneous time
entries.  Many of these objections are simply that the
descriptions of the work done were insufficiently detailed or
specific.  In particular, Defendant objects to Messrs. Perlberger
and Pomerantz's entries which list "trial preparation" and Mr.
Scheffer's entries listing depositions of unnamed witnesses.  We
find that the computer-generated time sheets provide a sufficient
description of the general nature of each activity performed, and
it would not be practicable to describe every iota of every
discrete time period in greater detail.  Accordingly, Defendant's
objection based on lack of specificity is overruled.[4]  See

---

[4] We also note that the attack on Mr. Jones and Mr. Scheffer's time
spent in depositions appears to be somewhat disingenuous.  Only Dr. Mechem and
Chief Butts are listed in the time sheet descriptions, but Defendant is aware
they were not the only witnesses deposed.  Defendant is also easily aware of
which of Plaintiff's attorneys were actually present, and it speaks volumes
that Defendant is not charging that Mr. Scheffer and Mr. Jones did not in fact
attend the depositions on the challenged dates.
   We furthermore take this opportunity to overrule Defendant's spurious
objection to certain of Mr. Scheffer's entries based on the fact that they are
round numbers - e.g. "7.5" or 8.0."  To the extent that this objection is that
the descriptions for those dates are insufficiently detailed, we again

<u>Washington v. Phila. County Ct. of C.P.</u>, 89 F.3d 1031, 1038 (3d
Cir. 1996) (rejecting claim that hours should be reduced because
related time entries were not specific and finding that computer-
generated time sheets were sufficient).

We will sustain Defendant's objections, however, with
respect to three miscellaneous issues.  First, we will reduce Mr.
Scheffer's time by another 1.25 hours which was spent on
correspondence and calls to someone named "Conduri."  This person
does not appear to be connected to the case and Plaintiff has not
provided an explanation.  Second, we will subtract one hour from
Mr. Perlberger's hours for the day of September 14, 2007.  On
that day, Mr. Perlberger's time entry indicates that he attended
the deposition of a Mr. Findlay; however, Mr. Findlay was not
actually deposed in this case.  Finally, we reduce Mr.
Pomerantz's time on October 25, 2007, by two hours.  On that day,
Mr. Pomerantz's time entry indicates that he prepared Joanne Fox
for trial testimony.  However, Ms. Fox did not testify at trial,
and thus this "preparation" did not contribute to the success of
Plaintiff's claim.

In sum, we will subtract one hour from Mr. Perlberger's
requested time, two hours from Mr. Pomerantz's time, and 10.69

---

overrule that objection and note that the entries for those dates are quite
specific.

16

hours from Mr. Scheffer's time.  We find the remaining hours to
have been reasonably expended in the pursuit of Plaintiff's
ultimately successful claim of gender discrimination.
Accordingly, Plaintiff's attorneys will be compensated for a
total of 691.18 hours.  The number of hours for which each
attorney will be compensated are as follows:

```
Norman Perlberger        265.16
Gerald J. Pomerantz      130.00
Mark S. Scheffer         174.28
Walter Schirrmacher      121.74
Michael W. Jones           5.00
```

### 3.  Lodestar Calculation

Multiplying the number of hours reasonably expended on this
litigation by the hourly rate which we have determined to be
reasonable for each attorney, we arrive at the following lodestar
calculations:

```
Norman Perlberger (265.16 hours x $350) = $92,806.00
Gerald J. Pomerantz (130 hours x $300) = $39,000.00
Mark S. Scheffer (174.28 hours x $300) = $52,284.00
Walter Schirrmacher (121.74 hours x $250) = $30,435.00
Michael W. Jones (5 hours x $150) = $750.00
```

The total lodestar amount is $215,275.00.  Defendant asserts,
however, that the fee award should be reduced by half of the
lodestar because the jury did not award the compensatory damages

17

sought by Plaintiff and Plaintiff only received a fraction of the amount of front pay that she was seeking.

The Third Circuit has stated that the lodestar may be reduced for "results obtained" with respect to "wholly or partially unsuccessful claims that are related to the litigation of the successful claims." Rode, 892 F.2d at 1183.  In other words, "where a plaintiff prevails on one or more claims but not on the others, fees shall not be awarded for time that would not have been spent had the unsuccessful claims not been pursued." Lanni v. New Jersey, 259 F.3d 146, 151 (3d Cir. 2001). Furthermore, the Third Circuit has instructed that, when determining a reasonable fee, it is permissible to look at "the amount of damages awarded . . . compared with the amount of damages requested." Washington, 89 F.3d at 1042.  This is because "the amount of damages awarded, when compared with the amount of damages requested may be one measure of how successful [a] plaintiff was in his or her action." Gen. Instrument Corp. v. Nu-Tek Elecs. & Mfg., 197 F.3d 83, 91 (3d Cir. 1999).

Defendant's argument is essentially that because Plaintiff was not awarded the full extent of the damages sought on her discrimination claim, she was not sufficiently "successful" to merit a fee award of the full lodestar.  We disagree.  As an initial matter, we note that Plaintiff did not pursue any legal

18

claims on which she was unsuccessful; indeed, she only pleaded one count each of gender discrimination under Title VII and the PHRA, on which the jury returned a verdict in Plaintiff's favor. Furthermore, Defendant does not even suggest what time would not have been expended had compensatory damages not been pursued, and we are unable to determine how such work could be distinguished from the work on her successful claims for back pay and front pay. See Spenser v. Wal-Mart Stores, Inc., 2005 WL 3654381, at *4 (D. Del. June 24, 2005) (citing Lanni, 259 F.3d at 151)("As the time spent on Plaintiff's successful and unsuccessful claims cannot be parsed, I am not required to reduce the award of attorney's fees to account for unsuccessful claims.").  Finally, this case is hardly one in which nominal damages were awarded to a Plaintiff requesting a far greater amount.  See Farrar, 506 U.S. at 114.  Indeed, the jury's verdict in excess of $400,000 for Plaintiff is a successful result by virtually any measure, even ignoring the non-monetary considerations related to successful vindication of one's civil rights.  Accordingly, as we cannot find that Plaintiff's attorneys expended a measurable amount of time in pursuit of unsuccessful claims, we decline Defendant's request to reduce the lodestar.  Plaintiff's attorneys will be awarded the full lodestar amount of $215,275.00.

## C.  Costs

Plaintiff has requested reimbursement for costs of $4,650.04, and submitted computer-generated itemized records of the expenditures.  These costs appear to the Court to be reasonable, and will be added to the attorneys' fees award. Accordingly, the total amount of attorneys' fees plus costs is $219,925.04.

## III.  Motion to Mold the Verdict

In her Motion to Mold the Verdict, Plaintiff requests prejudgment interest on her back pay award and damages to compensate for the negative tax consequences stemming from the fact that her back pay and front pay awards will be paid out in a lump sum, rather than spread out over time like an ordinary salary.

### A.  Prejudgment Interest

Whether to award prejudgment interest, which is intended to make victims of discrimination "whole," is within the sound discretion of the trial court.  Booker v. Taylor Milk Co., 64 F.3d 860, 868 (3d Cir. 1995).  Awarding prejudgment interest "serves to compensate a plaintiff for the loss of the use of

20

money that the plaintiff otherwise would have earned had he not been unjustly discharged." Id.  There is a "strong presumption in favor of awarding prejudgment interest, except where the award would result in unusual inequities." Id.

Defendant argues that awarding Plaintiff prejudgment interest would be inequitable because, during the back pay period, she received unemployment compensation and wages from other jobs.  It is true that successful Title VII plaintiffs generally are "not entitled to a recovery in excess of make-whole damages." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1100 (3d Cir. 1995).  But here, the jury took other payments received during the prejudgment period into account when, after being instructed in detail about calculation of damages, it decided on the back pay award that Plaintiff should receive. Thus, declining prejudgment interest on the basis of receipt of other wages would amount to interference with the jury's determination of the amount required to make Plaintiff "whole." We refuse to take this step, particularly as we have already denied Defendant's Motion for Remittitur.  Furthermore, the Third Circuit has held that, under the "collateral source rule," unemployment compensation should not be deducted from a Title VII back pay award. Craig v. Y & Y Snacks, Inc., 721 F.2d 77, 82 (3d Cir. 1983).  Declining to award prejudgment interest on back pay

21

based on Plaintiff's receipt of unemployment compensation during
the prejudgment period would contravene that holding.
Accordingly, because we find no "unusual inequities" that would
result from it, we find that Plaintiff is entitled to prejudgment
interest on her back pay award.

If a court decides to award prejudgment interest to the
requesting party, "[t]he applicable prejudgment interest rate is
left to the sound discretion of the Court." <u>Shovlin v. Timemed
Labeling Sys., Inc.</u>, 1997 WL 102523, at *2 (E.D. Pa. Feb. 28,
1997).  To determine the applicable interest rate, the Third
Circuit has instructed that the district court may use the rate
contained in the federal post-judgment interest rate statute, 28
U.S.C. § 1961(a), for guidance.  <u>Sun Ship, Inc. v. Matson
Navigation, Co.</u>, 785 F.2d 59, 63 (3d Cir. 1986).  In fact, many
courts have employed this approach in calculating prejudgment
interest.  <u>See, e.g.</u>, <u>Tomasso v. Boeing Co.</u>, 2007 WL 2753171
(E.D. Pa. Sept. 21, 2007); <u>O'Neill v. Sears, Roebuck & Co.</u>, 108
F. Supp. 2d 443, 445 (E.D. Pa. 2000); <u>Shovlin</u>, 1997 WL 102523, at
*2.  Among other reasons, this approach is desirable because it
is easy to determine the rate by using the rate charts in the
federal statute, and the Treasury bill ("T-bill") rates found in
28 U.S.C. § 1961 are a "suitable approximation of the available
return for a typical risk-free investment" during the back pay

period.  O'Neill, 108 F. Supp. 2d at 445 (quoting Davis v.
Rutgers Cas. Ins. Co., 964 F. Supp. 560, 576 (D.N.J. 1997)).  The
post-judgment interest rate statute provides for the calculation
as follows:

> Such interest shall be calculated from the date of the
> entry of the judgment, at a rate equal to weekly 1-year
> constant maturity Treasury yield, as published by the
> Board of Governors of the Federal Reserve System, for
> the calendar week preceding.

28 U.S.C. § 1961(a).

Plaintiff's expert, Andrew Verzilli, followed this method
(stating explicitly that he was following the court's analysis in
O'Neill) and provided an estimate of prejudgment interest based
on one-year T-bill rates as reported in the St. Louis Federal
Reserve Bank database.  Defendant has not challenged this method,
and we find that it is a reasonable one and adopt the approach.
Under this approach, Mr. Verzilli calculated prejudgment interest
on Plaintiff's back pay award to be $28,760.  This estimate was
made by dividing the amount of back pay awarded ($249,037.00) by
the amount of time in the prejudgment, back pay period (April 23,
2003 to November 2, 2007, or 4.53 years) to determine a
hypothetical yearly "salary" upon which interest could be
calculated.  This approach then applies the interest rate for
each one-year period, as contained in the Federal Reserve

database, to the amount of back pay that would have accrued to that point to determine the amount of interest due for that one-year period.  The yearly calculations break down as follows:

| Period | Back Pay | 1 Year T-bill | Interest |
|--------|----------|---------------|----------|
| 4/23/03-4/22/04 | $54,975 | 1.430% | $786 |
| 4/23/04-4/22/05 | $109,950 | 3.320% | $3,650 |
| 4/23/05-4/22/06 | $164,925 | 4.900% | $8,081 |
| 4/23/06-4/22/07 | $219,900 | 4.930% | $10,841 |
| 4/23/07-11/2/07 | $249,037 | 2.169% | $5,401 |
| TOTAL | | | $28,760 |

Because we find Plaintiff is entitled to prejudgment interest and Mr. Verzilli's calculations suitably approximate the return on a risk-free investment during the back pay period, we award $28,760 to Plaintiff in prejudgment interest on her back pay award.

### B.  Negative Tax Consequences

Finally, Plaintiff seeks an award of damages for the negative tax consequences she will sustain because her back and front pay will be paid in a lump sum, as opposed to having been spread out over the years as it would be if she were continuously

24

employed by the City.  Defendant contends that there is no precedent for such an award, and takes issue with the speculative nature of the tax calculations.

### 1.  Applicability of Award for Negative Tax Consequences

The Third Circuit has not expressly decided the question of whether successful Title VII plaintiffs may be awarded additional damages to compensate for the negative tax impact of a lump sum payment.  See Gelof v. Papineau, 829 F.2d 452, 455 n.2 (3d Cir. 1987)(declining to decide the issue because the defendant had conceded that the "judgment should properly include the negative tax impact of a lump sum payment").  However, though it has declined to approve such an award where the damages are compensatory[5] or liquidated in nature, the Third Circuit has noted that "[t]he very few cases discussing this issue have found such treatment appropriate only when damages are for back-pay, resulting in disparate tax treatment between those wages, had they been paid when owed, and their payment as a lump sum." Gibson v. City of Paterson, 199 Fed. Appx. 133, 136 (3d Cir. 2006); see also Skretvedt v. E.I. DuPont de Nemours, 372 F.3d

---

[5]  That is to say, damages which compensate for some harm other than lost back pay or front pay, such as mental anguish or emotional distress.

193, 204 n. 15 (3d Cir. 2004)(declining to provide tax liability award where tax payments were "completely distinct from any ill-gotten profits which might properly be made subject to a viable restitution claim"); O'Neill, 108 F. Supp. 2d at 446-47 (approving award for negative tax consequences for back pay and front pay, but declining it for compensatory and liquidated damages).

We fail to see how an award compensating for the negative tax consequences of receiving lost wages in a lump sum is different from an award of prejudgment interest. See Arneson v. Callahan, 128 F.3d 1243, 1247 (8th Cir. 1997) ("If the tax enhancement remedy is available under Title VII, we find it analogous to the prejudgment interest remedy as an element of making persons whole for discrimination injuries."). As with the prejudgment interest award, which "serves to compensate a plaintiff for the loss of the use of money that the plaintiff otherwise would have earned had he not been unjustly discharged," Booker, 64 F.3d at 868, the tax consequences remedy simply returns to the plaintiff money that she would have had if she not been terminated.[6] This is well within the remedial structure of

---

[6] We note that, importantly, Plaintiff is not seeking to be immune from *any* tax payments on the back pay and front pay awards. Rather, she is simply asking for the difference in tax payments created by the fact that she would be taxed at a higher percentage by receiving those lost wages in one lump sum. Awarding just the difference between the taxes on the lump sum and the taxes she would pay on that amount if had been spread out over time thus would

Title VII, which aims to make victims of discrimination whole.
We therefore agree with the Court's conclusion in <u>O'Neill</u>, 108 F.
Supp. 2d at 447, that "[s]ince the Third Circuit recognized the
economic necessity of compensating for the lost 'time value of
money' in order to comply with the 'make-whole' doctrine, the
Third Circuit would likewise compensate the claimant for the
depletion of that money due to the increased taxes to which the
award is subject on account of its being received in a single tax
year."

Furthermore, the Third Circuit has noted that the "risk of
lack of certainty with respect to projections of lost income must
be borne by the wrongdoer, not the victim," <u>Starceski</u>, 54 F.3d at
1101 (citing <u>Goss v. Exxon Office Sys. Co.</u>, 747 F.2d 885, 889 (3d
Cir. 1984)).  Thus, as with prejudgment interest, the mere fact
that there is an element of speculation involved in calculating
the taxes that would have been paid on lost wages does not
provide a sound reason for denying the award.[7]  Since it has been
already determined that the wages in question were lost as a

---

appropriately put her in the place she would have been had she not been
unjustly discharged.

[7]  This is particularly true where, as in <u>O'Neill</u>, 108 F. Supp. 108 at
447, we have calculations of the tax impact of the lump sum award from experts
for both Plaintiff and Defendant.  Plaintiff's tax returns during the back pay
period - which are in the trial record - provide an adequate basis on which to
calculate the negative tax consequences so that the endeavor is not impossibly
speculative.

result of Defendant's unlawful actions, the Defendant "is not entitled to complain that [the damages] cannot be measure with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931). In fact, were we to decline the tax enhancement award, the Plaintiff would continue to suffer a punishment - the loss of roughly $46,000, as we discuss below - that resulted directly from her employer's unlawful discrimination. Such a result is plainly contrary to the remedial "make-whole" purposes of Title VII.

Finally, we note with approval the Court's discussion in O'Neill of the appropriateness of the tax enhancement award with respect to front pay. In approving an award to compensate for the negative tax consequences of a lump sum award for a successful ADEA plaintiff, the Court in O'Neill explained:

> The argument [in favor of the tax award] is particularly compelling in the case of front pay, since the plaintiff has already had his front pay recovery reduced to present value, on the assumption that he can now invest the money and receive a yearly return equal to his lost wages. However, if the plaintiff must pay a higher tax on the present value of his earnings, this leaves less for investment. Hence, the plaintiff will not, in fact, realize an investment gain large enough to equal the future wages that he is not getting as a result of the defendant's discriminatory conduct. . . . The goal of the ADEA is to allow plaintiff to *keep* the same amount of money as if he had not been unlawfully

> terminated.  Compliance with this goal requires
> reimbursement for the reduced amount of front pay money
> that the plaintiff has to invest as a result of higher
> taxes . . . .

O'Neill, 108 F. Supp. 2d at 447.  Similarly, the jury in this

case was instructed to discount its front pay award to its

present value, or to an amount that would be "necessary today

when invested to provide plaintiff with the full amount of her

future damages over time."  (Day 5 Tr. 159).  As Title VII has

the same "make-whole" objectives as the ADEA, we find that

O'Neill's rationale for awarding a tax enhancement on front pay

applies with equal force in this case.  Accordingly, for all of

the above reasons, we find this award to be appropriate and well

within our discretion "to fashion such relief as the particular

circumstances may require" to make victims of unlawful

discrimination whole.[8]  Franks v. Bowman Transp. Co., 424 U.S.

747, 764 (1976).

---

[8] In closing, we also note that the jury was not instructed to consider
the tax consequences of the judgment when calculating back pay and front pay
awards, if any.  Had the jury been so instructed, we would be far less
inclined to find the tax enhancement award necessary to make Plaintiff whole.

**2.  Calculation of Award for Negative Tax Consequences**

The report of Mr. Verzilli that accompanies Plaintiff's request for the tax enhancement award concludes that Plaintiff would pay an additional $87,330 in taxes on the lump sum award. This calculation was made by comparing the tax rate on the lump sum of $464,037 and the $19,400 in other income Plaintiff actually made in 2007, with the tax rate on her "normal" paramedic salary of $51,925.  According to Mr. Verzilli, this amounts to a difference in tax rate of 18.82%, and multiplying that difference by the amount of the lump sum award results in the requested $87,330.

Defendant, however, suggests that Mr. Verzilli's calculations do not accurately reflect the negative tax consequences of the lump sum award for several reasons.  First, Defendant argues that Mr. Verzilli failed to account for the impact of Plaintiff's contingency fee agreement with her attorneys on the lump sum award.  Second, the City contends that Mr. Verzilli should only have based his calculations on the amount of the award, and not other income from the back pay period.  Third, the City suggests that Mr. Verzilli used the highest possible tax rate - married filing separately - for the lump sum award without justification for doing so.  Finally, the

City points out that Mr. Verzilli used the standard deduction for calculating the tax rate on the lump sum even though Plaintiff actually itemized her deductions in her tax filings between 2003 and 2006.  Correcting for these defects, Defendant arrives at a result of $46,746.00 in negative tax consequences.[9]

The Court agrees with Defendant's concerns, and finds its method of calculation to be a better estimator of how Plaintiff would have filed her taxes had she not been discharged, because it is better grounded in the actual tax returns from the back pay period that were in the trial record.  The actual calculations are as follows:

| Lump Sum Award | $345,542.00 |
|---|---|
| Deductions[10] | $16,806.00 |
| Taxable Income | $328,736.00 |
| Tax | $82,863.00 |
| Effective Tax Rate (married filing jointly) | 26.67% |
| Normal Tax Rate on "normal salary" of $51,925 | 12.45% |
| Tax Increase | 14.22% |

---

[9] Defendant's calculation was prepared by co-counsel Robert Haurin, who is also a Certified Public Accountant.

[10] Defendant's estimate of itemized deductions is based on the deductions actually taken by the Plaintiff in the tax years between 2003 and 2006, which averaged $16,806 per year.

| Additional tax on lump sum | $46,746.00 |
|---|---|

Accordingly, we shall award Plaintiff $46,746.00 to compensate for the negative tax consequences of receiving her back pay and front pay awards in a lump sum.

**IV.   Conclusion**

In sum, we find that Plaintiff's attorneys are entitled to be compensated for $219,925.04 in fees and costs, as is reflected by our calculations of the lodestar.  Plaintiff is furthermore entitled to $28,760 in prejudgment interest and $46,746.00 in tax consequences, in order to make her "whole" within the remedial structure of Title VII.

An order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
DAWN LOESCH,                      :
                                  :
          Plaintiff,              :     CIVIL ACTION
                                  :
     vs.                          :     No. 05-cv-0578
                                  :
CITY OF PHILADELPHIA,             :
                                  :
          Defendant.              :
```

<u>ORDER</u>

AND NOW, this  19TH  day of June, 2008, upon consideration of Plaintiff's Motion to Mold Verdict and for Counsel Fees (Doc. Nos. 69, 87), and responses thereto, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the Motion is GRANTED and Plaintiff is awarded the following:

1.  $219,925.04 in attorneys' fees and costs;

2.  $28,760 in prejudgment interest; and

3.  $46,746.00 to compensate for the negative tax consequences of her award.

BY THE COURT:

<u>S/J. CURTIS JOYNER</u>
J. CURTIS JOYNER, J.